WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Arias,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-22-08123-PCT-DMF<br><br>**ORDER** |

At issue is the denial of Plaintiff Maria Arias' application for disability insurance benefits under the Social Security Act ("Act"). On July 12, 2022, Plaintiff filed a Complaint with this Court, seeking review of the denial of benefits. (Doc. 1) The Court has reviewed Plaintiff's Opening Brief (Doc. 19), Defendant Commissioner's Answering Brief (Doc. 23), Plaintiff's Reply Brief (Doc. 24), and the administrative record (Doc. 18, R.). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and with the parties' consent to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 8, 15) The Court now affirms the final decision of the Commissioner. (R. at 24-32)

**I.     BACKGROUND**

On February 20, 2019, Plaintiff filed an application for Title II Disability Insurance Benefits, alleging disability beginning November 27, 2018. (R. at 24, 184) Plaintiff's application was denied initially on August 30, 2019 (R. at 86-89), and upon reconsideration. (R. at 91-96) Plaintiff subsequently requested a hearing, held on April 23,

2021 (R. at 37-59), and ALJ Sung Park issued a decision denying Plaintiff's application on June 22, 2021. (R. at 24-32) The Appeals Council denied Plaintiff's request for review, at which point the ALJ's decision became final. (R. at 1-4) Following this unfavorable decision, Plaintiff filed the present appeal.

After considering the medical evidence and opinions, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 27, 2018, the alleged onset date. (R. at 26) The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and obesity. (*Id.*) The ALJ further found that Plaintiff had a nonsevere impairment of hypertension, that a brain tumor, diabetes, and knee pain were not medically determinable physical impairments, and that Plaintiff did not have a medically determinable mental impairment. (R. at 27) Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*)

In assessing Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff's symptom testimony was inconsistent with the evidence of record. (R. at 28-29) The ALJ found opinions of two state agency consultants to be partially persuasive. (R. at 30-31) The record contained no other medical source opinions. Ultimately, the ALJ determined that Plaintiff could perform light work except Plaintiff could occasionally lift/carry up to 20 pounds, climb ramps or stairs, kneel, stoop, crouch, and crawl; could frequently lift/carry up to ten pounds and reach bilaterally; could stand and/or walk for four hours in an eight-hour workday; could six for six hours in an eight-hour workday; could not climb ladders, ropes, or scaffolds; could sit for 2-3 minutes after standing for 30 minutes; and could stand for 2-3 minutes after sitting for 30 minutes. (R. at 28) Relying on the testimony of a vocational expert, the ALJ determined that Plaintiff could perform past relevant work as a cashier II. (R. at 31-32) Consequently, the ALJ concluded that Plaintiff was not disabled. (R. at 32)

**II.     LEGAL STANDARD**

A district court only reviews the issues raised by the party challenging an ALJ's

decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court finds that the ALJ's decision was not based on substantial evidence or was based on legal error, the court may set aside the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence requires "more than a mere scintilla but less than a preponderance" and should be enough evidence "as a reasonable mind might accept as adequate to support a conclusion." *Id*. (*quoting Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted).

In determining whether a claimant is disabled under the Act, the ALJ must follow a five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id*. Second, the ALJ determines if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or equals a listing in Appendix 1 of Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id*. If the ALJ must proceed to step four, the ALJ determines whether the claimant's RFC allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id*. If the ALJ must proceed to step five, the ALJ determines whether the claimant's RFC allows the claimant to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III.  ANALYSIS

Plaintiff raises only one issue for the Court's consideration: that "[t]he ALJ's RFC determination is not supported by substantial evidence where the ALJ crafted an RFC based upon lay interpretation of the medical record." (Doc. 19 at 1) As sub-issues of Plaintiff's argument, Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's language

barrier, improperly relied on the state agency consultant opinions, and made an improper lay assessment of the medical evidence. (*Id*. at 9-15) Plaintiff requests that the Court reverse the ALJ's decision and remand her case for further proceedings. (*Id*. at 15) The Commissioner asks the Court to affirm. (Doc. 23 at 8)

### A. Legal Standard

RFC is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC "based on all the relevant evidence" in the record, including medical sources, claimant testimony, and lay testimony. *Id*; *see also Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). An ALJ must consider all medically determinable impairments, including non-severe impairments, and will consider a claimant's physical, mental, and sensory abilities. 20 C.F.R. § 404.1545(a)(2), (4); *see also* 20 C.F.R. § 404.1545(b)-(d).

### B. ALJ's Findings

In making an RFC determination, the ALJ considered Plaintiff's symptom testimony, the objective medical evidence, and the opinions of two state agency consultants. (R. at 28-31) The ALJ determined that Plaintiff's testimony that she was always in pain was inconsistent with reports that Plaintiff was in no acute distress at medical appointments. (R. at 28-29)

As for the objective medical evidence, the ALJ found that despite Plaintiff's complaints of neck and back pain, cervical spine imaging was unremarkable. (R. at 29) Although physical examinations showed tenderness and spasms, Plaintiff had normal range of motion, normal gait aside from a few occasions, and normal strength. (*Id*.) The ALJ found no imaging supporting medical assessments that Plaintiff had herniated nucleus pulposus at C3-C4 and C4-C5. (*Id*.) As for Plaintiff's cervical and lumbar spine degenerative disc disease and back, neck, and joint pain, the ALJ acknowledged that a radiograph of the lumbar spine showed posterior rod and transpedicular screw fixation from L3-S1, as well as lumbar facet degenerative changes. (*Id*.) However, the ALJ found that imaging also showed normal anatomic alignment and well-preserved intervertebral

disc space. (*Id.*) Plaintiff's left knee radiograph showed no fracture, malalignment, focal osseous abnormality, or significant joint effusion. (*Id.*) An MRI of Plaintiff's cervical spine showed normal discs and no evidence of spinal canal or neural foraminal stenosis at C2-C4, C5-C6, and C7-T1, yet the MRI did show small posterior disc osteophytes without significant spinal canal narrowing or neural foraminal stenosis at C4-C5 and C6-C7. (R. at 29-30) The ALJ found that Plaintiff's treatment records overall did "not document *persistent* restrictions in joint or back motion, *significant* abnormalities of gait, or *continued* neurological deficits, which would impact the claimant's ability to stand and/or walk for four hours out of an eight-hour workday[.]" (R. at 30) The ALJ further stated that the ALJ considered Plaintiff's obesity alone and in combination with Plaintiff's other impairments. (*Id.*)

As for the medical opinions, the ALJ considered the opinions of two state agency consultants, M. Bargan, M.D., and Alan Coleman, M.D. (R. at 30-31) Dr. Bargan opined that Plaintiff could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; could stand and/or walk for six hours in an eight-hour workday; and could sit for six hours in an eight-hour workday. (R. at 70) Dr. Coleman opined that Plaintiff could lift/carry up to 25 pounds occasionally and up to 20 pounds frequently; could stand and/or walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could occasionally crawl and climb ladders/ropes/scaffolds; could frequently balance, stoop, kneel, crouch, and climb ramps and stairs; and should avoid concentrated exposure to hazards such as machinery and heights. (R. at 81-82) Nevertheless, the ALJ found that a lumbar spine radiograph showing posterior rod and transpedicular screw fixation and degenerative changes "warrant[ed] a finding that [Plaintiff] can stand and/or walk for only four hours out of an eight-hour workday." (R. at 31) As such, the ALJ found Dr. Bargan and Dr. Coleman's opinions only partially persuasive. (*Id.*)

**C. Discussion**

*1. Ability to communicate in English*

Plaintiff first argues that the ALJ failed to account for Plaintiff's language barrier in

- 5 -

the ALJ's RFC determination. (Doc. 19 at 10-11) Plaintiff asserts that her treating providers repeatedly noted that Plaintiff spoke little English, that Plaintiff had a significant language barrier, and that Plaintiff required a translator at medical appointments and during the ALJ hearing. (*Id.*) Defendant asserts that the ALJ did not need to consider Plaintiff's English literacy in the RFC determination because such a consideration is only pertinent to determining which occupations Plaintiff can perform in Step Five of the sequential evaluation process. (Doc. 23 at 5-6) Plaintiff counters that literacy and communication in English are two different issues and that Defendant has conflated these issues. (Doc. 24 at 2-4)

In making an RFC determination, the ALJ considers "all medically determinable impairments[,]" including physical and mental limitations caused by any impairments. 20 C.F.R. § 404.1545(a)(2). Plaintiff is correct that there is a distinction between literacy and an ability to communicate in English. *Calderon v. Astrue*, 2009 WL 3790008, at *9 (E.D. Cal. Nov. 10, 2009). However, literacy or education is not relevant to the existence of a disability, but only to whether a claimant can perform work in the national economy. *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). As such, "[l]iteracy or education level is a vocational factor relevant only to the Step Five inquiry and not to the existence of a disability." *Broadway v. Colvin*, 2014 WL 4249153, at *14 (E.D. Cal. Aug. 27, 2014). Further, prior to February 25, 2020, 20 C.F.R. § 404.1564, titled "Your education as a vocational factor," allowed an ALJ to consider both a claimant's illiteracy and inability to communicate in English, but English language proficiency is no longer assessed when an ALJ considers a claimant's educational level and vocational abilities. *See* 20 C.F.R. § 404.1564 (amended Feb. 25, 2020); Social Security Ruling ("SSR") 20-1p, 2020 WL 1285114 (Mar. 9, 2020) ("When determining the appropriate education category, we will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency.").

The ALJ's decision was issued on June 25, 2021, following the effective date of the amendment to 20 C.F.R. § 404.1564. (R. at 32) Although Plaintiff references the previous

version of 20 C.F.R. § 404.1564, which permitted consideration of a claimant's ability to communicate in English, Plaintiff has not shown any current authority suggesting that the ALJ improperly failed to consider the extent of Plaintiff's English language abilities. Further, Plaintiff's cited cases pertain to an ALJ's assessment of a claimant's English language abilities in the context of vocational expert testimony, the Step Five sequential evaluation process, or the application of a claimant's disability to the Grids. (Doc. 24 at 3-4) Plaintiff does not challenge the ALJ's determination in the aforementioned contexts.

Accordingly, the ALJ did not err in failing to consider Plaintiff's ability to communicate in English as part of the ALJ's RFC determination. *See, e.g., Salimeh N. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1963719, at *4-5 (W.D. Wash. June 6, 2022) (ALJ did not err in failing to discuss ability to communicate in English in RFC determination or Step Five analysis).

*2. Medical opinion from treating or examining source*

Plaintiff next argues that the ALJ did not consider a medical opinion from a treating or examining source and that the ALJ thus did not support Plaintiff's RFC determination with substantial evidence. (Doc. 19 at 10) Defendant asserts that it was Plaintiff's responsibility to show that she was disabled and to provide medical evidence demonstrating an impairment. (Doc. 23 at 6-7) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).)

No treating or examining physician provided an opinion regarding Plaintiff's impairments and resulting limitations. The opinion of a non-treating, non-examining physician may constitute substantial evidence when the non-treating, non-examining physician's opinion is consistent with independent clinical findings or other record evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The ALJ has the responsibility to resolve conflicts and to weigh the evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1031 (9th Cir. 2007). Substantial evidence only requires such evidence "as a reasonable mind might accept as adequate to support a conclusion." *Orn*, 495 F.3d at 630. An ALJ's decision

should be upheld if "evidence is susceptible to more than one rational interpretation[.]" *Id.*

A claimant has the responsibility to prove that she is disabled and to furnish evidence demonstrating disability. *See* 20 C.F.R. § 404.1512(a). Despite a claimant having the general burden to demonstrate disability, an ALJ also has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered […] even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983); *see also* 20 C.F.R. § 404.1512(b). However, the ALJ's duty to develop the record only arises "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Plaintiff does not argue that the evidence is ambiguous, but Plaintiff argues that the record contained insufficient evidence as to how Plaintiff's impairments translate to work limitations. (Doc. 19 at 13) Specifically, Plaintiff points to a June 2018 X-ray showing a posterior rod and transpedicular screw fixation at L3-S1 and degenerative changes in the spine; a November 2018 cervical MRI showing minimal degenerative changes and a benign hemangioma; a January 2019 provider visit in which Plaintiff endorsed arthralgia, joint pain, and back pain, and demonstrated tenderness, pain with neck and back motion, and abnormal gait; Plaintiff's eight-week course of physical therapy; and a February 2021 examination in which a treating provider noted cervical subluxation at C4-C5. (*Id.* at 12-13)

The ALJ's characterization of the medical evidence of record is not entirely accurate. The ALJ stated that Plaintiff's cervical spine imaging appeared unremarkable, yet imaging reports cited by the ALJ reflect that Plaintiff had a benign hemangioma, degenerative changes, and slight subluxation at C4-C5. (R. at 483, 523, 550) The ALJ also stated that "treatment records do not document *persistent* restrictions in joint or back motion, *significant* abnormalities of gait, or *continued* neurological deficits[.]" (R. at 30) (emphasis in original) To support this statement, the ALJ provided numerous record citations but did not explain how the findings at each of these citations supported the ALJ's

conclusion. (*Id.*) The ALJ did not explain what neurological deficits were expected and were not present in Plaintiff's treatment records. Moreover, contrary to the ALJ's assertion, many of the ALJ's record citations reflect that Plaintiff had abnormal or antalgic gait (R. at 308, 311, 557, 597, 605, 622, 631) and decreased range of motion (R. at 308, 311, 314, 316, 319, 321, 324, 326, 329, 547, 571, 596, 604-05, 621-22, 630-31). In only two of the ALJ's cited treatment records did Plaintiff's treating providers fail to observe tenderness, antalgic gait, or decreased range of motion. (R. at 540-41, 564-65)[1]

Nevertheless, earlier in the ALJ's decision, the ALJ did acknowledge, albeit without citation, that Plaintiff's physical examinations showed tenderness, spasm, and occasional antalgic gait, as well as "pretty normal range of motion," normal gait, and strength. (R. at 29) The ALJ also recognized that no imaging supported a herniated nucleus pulposus at C3-C5; that a June 2018 radiograph showed a posterior rod and transpedicular screw fixation at L3-S1 and lumbar degenerative changes, in addition to normal alignment and intervertebral disc spacing; that Plaintiff had a normal left knee radiograph in June 2018; and that a November 2018 cervical spine MRI was normal aside from small posterior disc-osteophytes at C4-C5 and C6-C7. (R. at 29-30)

As for the state agency consultant opinions, each consultant provided reasoning for Plaintiff's assessed limitations. Dr. Bargan explained that Plaintiff's cervical spine imaging was mostly normal with no severe findings; that Plaintiff had normal left knee imaging; that Plaintiff had excellent range of motion in April 2019; and that Plaintiff underwent physical therapy and epidural steroid injections. (R. at 70) Dr. Coleman stated that his limitations resulted from Plaintiff's painful neck extension, which limited climbing ladders and crawling, and Plaintiff's back pain, which limited mobility. (R. at 82) Dr. Coleman recognized that Plaintiff underwent two lumbar spine surgeries for L3-S1 fusion without apparent benefit but found that Plaintiff's physical exams were normal, aside from neck and low back tenderness; that Plaintiff's gait, balance, strength, sensation, and reflexes were normal; that Plaintiff had no sciatica or cervical or lumbar radiculopathy; that

---

[1] In the ALJ's final cited treatment record, there are no documented physical examination findings. (R. at 589)

Plaintiff's cervical spine MRI was normal aside from the "incidental finding" of small osteophyte complexes; that the record contained no evidence of Plaintiff's alleged diabetes or a brain tumor, although the record did show evidence of a non-severe hemangioma, which may have been equated with a tumor; and that Plaintiff's left knee examination and imaging were normal. (*Id.*) The state agency consultants thus considered the objective medical findings which Plaintiff points out in her opening brief, including Plaintiff's surgical fusion at L3-S1, Plaintiff's cervical imaging showing mild degenerative changes and hemangioma, Plaintiff's tenderness, and Plaintiff's course of physical therapy. Although Dr. Coleman inaccurately stated that Plaintiff had normal gait, Dr. Coleman and Dr. Bargan both supported their opinions with sufficient additional reasoning that is consistent with the evidence of record as described above. Plaintiff points out no other evidence which would suggest that the state agency consultants' opinions were inconsistent with the record.

Plaintiff has not shown that the record was ambiguous or inadequate, and neither the ALJ nor the state agency consultants suggested that the record appeared ambiguous or inadequate. Given the ALJ's assessment of the record and the state agency consultants' consideration of the evidence of record, Plaintiff has not shown that the ALJ did not provide substantial evidence to support the ALJ's RFC determination. Even if the record is "susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Orn*, 495 F.3d at 630. Moreover, Plaintiff identifies no further limitations that the ALJ might have found if the record had included an opinion from a treating or examining doctor or if the ALJ had found the state agency consultants' opinions fully persuasive. *See, e.g., Laureen L. v. Comm'r of Soc. Sec. Admin.*, 2021 WL 2313430, at *3 (W.D. Wash. June 7, 2021) (no error in relying on state agency opinions where plaintiff did not show inconsistency with the record).

As the evidence of record was neither ambiguous nor inadequate, the ALJ did not have a duty to further develop the record, and the ALJ did not err in relying on the state agency consultants' opinions to formulate Plaintiff's RFC. *See, e.g., Trevino v. Comm'r of*

*Soc. Sec. Admin.*, 2021 WL 620700, at *2-3 (E.D. Cal. Feb. 17, 2021) (ALJ provided substantial evidence in relying on state agency consultant opinions); *Gomez v. Astrue*, 2009 WL 2390852, at *3-4 (C.D. Cal. July 31, 2009) (ALJ did not err by not further developing the record and by relying on consultative opinions); *Harlow v. Astrue*, 2008 WL 4661809, at *3-4 (C.D. Cal. Oct. 20, 2008) (ALJ did not err in failing to develop record where plaintiff did not show ambiguous or inadequate record and neither ALJ nor physician opinions considered the record ambiguous or inadequate).

### 3. Whether the ALJ impermissibly "played doctor"

Finally, Plaintiff argues that the ALJ improperly "played doctor" by crafting Plaintiff's RFC from the record instead of adopting limitations from medical opinions. (Doc. 19 at 11-15) Plaintiff asserts that the ALJ made an improper assessment of Plaintiff's condition, resulting in RFC limitations that are not supported by the record. (*Id.* at 14-15) Defendant counters that an ALJ must consider the objective medical evidence and asserts that a presumption exists that an ALJ may independently review the record as a whole to craft a claimant's RFC. (Doc. 23 at 7-8)

In crafting a plaintiff's RFC, an "ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Although it is true that an ALJ should not make "his own exploration and assessment as to [a] claimant's physical condition[,]" *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975), an ALJ is primarily prohibited from making independent medical findings or from rejecting all medical source opinions and crafting an RFC based on the raw evidence in the record. Thus, an ALJ's mere divergence from medical source opinions does not necessarily establish that an ALJ improperly "played doctor." According to Social Security Agency regulations, an ALJ must consider all the relevant medical and other evidence in making an RFC determination, including medical opinions and objective medical evidence. 20 C.F.R.§ 404.1545(a)(3); *see also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (when weighing non-examining, non-treating

physician opinions, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence").

Although Plaintiff cites *Sloan v. Astrue*, 2009 WL 5184426, at *4 (C.D. Cal. Dec. 21, 2009), for the proposition that an ALJ's lay assessment is improper, the ALJ in *Sloan* did not support the plaintiff's RFC with *any* physician opinion. Similarly, in *Mayberry v. Comm'r of Soc. Sec. Admin.*, 2022 WL 658805, at *4-5 (D. Ariz. Jan. 28, 2022), also cited by Plaintiff, an ALJ discounted the only opinion discussing the claimant's physical limitations and crafted the claimant's RFC "without the benefit of a reliable medical opinion on" the claimant's physical limitations. Here, in contrast, the ALJ did not wholly discount the state agency consultants' opinions and adopted most of the consultants' limitations, as opposed to crafting Plaintiff's limitations from the raw medical evidence. The ALJ's RFC determination here is thus differentiable from circumstances where no evidence or source opinion supported an ALJ's RFC determination. *See, e.g., Tansy v. Comm'r of Soc. Sec. Admin.*, 2022 WL 16752321, at *9 (D. Ariz. Sept. 22, 2022) (ALJ did not play doctor in evaluating all evidence to craft RFC); *Hardin v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4092644, at *6 (D. Ariz. Sept. 7, 2022) (same, collecting cases).

Further, where the ALJ diverged from the state agency consultants' opinions, the ALJ included more restrictions in Plaintiff's RFC, such as limiting Plaintiff to standing or walking four hours in an eight-hour workday, no climbing ladders/ropes/scaffolds, sitting for 2-3 minutes after standing for 30 minutes, and standing for 2-3 minutes after sitting for 30 minutes. (R. at 28) The ALJ explained the ALJ's divergence from the consultants' opinions, namely that Plaintiff's June 27, 2018, radiograph showing a posterior rod, transpedicular screw fixation, and degenerative changes warranted more restriction on Plaintiff's ability to stand and/or walk. (R. at 31)

Accordingly, the ALJ did not make an improper lay assessment of the medical evidence and did not err in this regard.

**IV. CONCLUSION**

The ALJ provided substantial evidence to support the ALJ's RFC determination and

did not err in doing so. The Commissioner's June 25, 2021, decision (R. at 24-32) is therefore affirmed.

Accordingly,

**IT IS ORDERED** that the June 25, 2021, decision of the ALJ (R. at 24-32) is **affirmed**. The Clerk of Court is directed to enter judgment consistent with this Order and close this case.

Dated this 12th day of April, 2023.

_____
Honorable Deborah M. Fine
United States Magistrate Judge